May it please the Court, Doug Janicek for Appellant Horace Friend. By now, it is likely apparent to anyone who has reviewed the issues surrounding the 1940 Act that it is literally a maze in which it is easy to get lost. But I can distill Mr. Friend's application to these two fundamental points. One, he is entitled to the 1940 Act's relaxed residency requirement for citizen fathers. And two... Relaxed in that he applies to people who live in the Philippines. Correct. Relaxed meaning if you reside in an outlying possession such as the Philippines. And two, he is not subject to the 1940 Act's legitimation requirement that it be done by the age of 21. That I don't follow. How can you pick and choose? I thought your argument was really interesting until I hit that. It's actually in the agency's own guidance. If you look at the INS letter 309.1, this is under section B, paternity established under number 4. Legitimation conferred full citizenship status upon the child at birth, although accomplished long after the child attained majority. And even after January 13, 1941. Because those born prior thereto were not affected retrospectively by the age limitations on legitimation provided in the 1940 Act. The way I understand that is it's because that whole provision does not apply to people who were born before 1941 or whatever the date was. And indeed it's an explanation for why they would have treated the mothers and fathers differently. Because if they treated the fathers prospectively, you would have this problem. And if you treated it, so that is why they didn't. I.e. so as not to make the legitimation change negatively retrospectively applicable. Right. But if the 1940 Act, if you take the government's position that it is prospectively only, then why would you need to say that? Why would you need to say that this is not retroactive? But there's no feed in the statute, whatever is there for taking one and not the other. Oh, absolutely, Your Honor, there is. If you look at section 205 of the Act, it says the provisions of section 201E, which is what we are claiming citizenship under, those provisions hereof apply as of the date of birth. If it was prospective only, this is section 205 of the 1940 Act, if it was prospective only, why wouldn't you stop after hereof apply? That's all you would need to say, the hereof apply. Why in paragraph 2? This is just your pure statutory construction argument, I assume, as to why it should be? Correct. Correct, Your Honor. So what's the meaning of the language in paragraph 2? Why include that? The language in paragraph 2 came because of the confusion that arose when the Attorney General published an opinion letter at 39 OAG 290. It's in our briefs. And what he said was, after the 1934 Act, because prior to 1934, citizen mothers living abroad could not confer citizenship to their offspring. It was something that was for the benefit only of fathers, and they deemed that to be unfair. So in 1934, they passed an Act that was meant to correct that. I point out that the 1934 Act says any child hereafter born. That language is not in section 205. I just point that out. So after the 1934 Act comes about, the State Department takes a position that, okay, this has resolved the issue. But then the Attorney General says, no, we still won't recognize citizen mothers to be able to pass citizenship to a child born out of wedlock. And they even said that they were hoping something could be corrected. But that is a total explanation for your earlier observation of why they didn't stop at the sentence where you thought they would have stopped it, in the first paragraph. Because they had to explain that it applied to a child born out of wedlock. Well, Your Honor was asking the question why in paragraph one. Everybody was asking. But what I'm saying is an answer to that is in paragraph one. You're saying that the language in paragraph two was meant to contrast with paragraph one? No, I'm saying that paragraph one, you suggested that they could have stopped here of apply as of the date of birth period. Okay. But, no, they couldn't because there was a question about whether any of this applied to a child born out of wedlock. So they had to explain that it did to say to a child born out of wedlock, but provided that paternity is established. Okay. Well, then there's another problem. What if paternity isn't established but the mother is a citizen? So then they go on in paragraph two and they deal with that. So it's all of a piece except that I still don't see where in paragraph one there is any way to break up the applicability by making some of it applicable prospectively and some retrospectively. Well, the as of the date of birth language is modifying here of apply. It's not modifying the legitimation requirement. First of all, it's grammatically separate. And second of all, legitimation by its nature is at birth. There would be no point in saying here of apply as of the date of birth. That is retroactive language that was used, I point now to the 1994 Act, when Congress finally went back and made it retroactive, the 1934 Act, to cover children born to citizen mothers out of wedlock prior to 1934. When they did that, they said the provisions, the amendment shall be applied as if it had been in effect as of the date of their birth. That's the very same language that they used in the first paragraph of Section 205 in the 1940 Act. Moreover, even more compelling, look at the 1952 Act when they addressed children born out of wedlock. 1952 Act, Section 309. The provisions of paragraph five of Section 301A under the 1952 Act, that's the equivalent of 201E under the 1940 Act, the one that we were claiming citizenship on, shall apply as of the date of birth to a child born out of wedlock on or after the effective date of this Act. So they clearly knew how to say that when we make rules for out of wedlock children, they clearly knew how to say this is going to apply prospectively. They did not include that very express language that you find in Section 309 of the 1952 Act 12 years before that. I guess I hear you, and that's a nice contrast. But I guess to me the contrast that's more stark is that the whether born before or after the effective date of this Act, which we see in paragraph two of Section 205 of the 1940 Act, doesn't appear in paragraph one. And if they had wanted those to be congruent, why not include that language in paragraph one? I understand, Your Honor. I think this is where you have to pull back and then look at the context of history of this particular issue of children born out of wedlock. Prior to the 1940 Act, you had citizen fathers able to do it. But not if they had lived in the Philippines. Correct. So this is expanding. It is expanding. But you also did not have the minority legitimization requirement. Correct. So this was a limitation. It was really a limitation more than it was an expansion because it was an expansion, a minor geographical expansion, but the limitation was across the board to everybody, not just limited to the Philippines, right? Well, this provision, correct, you're talking about children born out of wedlock. Right. Correct. But the point is now with everything in place, you have a situation where you have a citizen father pre-1940, living in the Philippines, cannot transmit his citizenship. A citizen mother can. After 1940, a citizen father can, living in the Philippines. A citizen mother can, living in the Philippines. So when you look at the, you know, I know that kind of gets into the equal protection argument, but I think even before you get there, you have to say, why in the world would you have this provision carved out for citizen fathers living in an outlying possession? I just gave you a reason, which is exactly connected to the fact that this is a limitation now. So more generally, so that unless they're going to start dividing the whole statute up into many pieces, it would be unfair to, with regard to children born before 1940, to limit the legitimation requirement. I agree, but why then in 1952 do they lay out the very same provisions for out-of-wedlock children to citizen mothers and fathers? One, you know, one-year residency in an outlying possession. They're changing something because something didn't make them happy about what they had before, but it's not very helpful in interpreting the 1940 statute. Well, it sheds light on the fact that Congress never intended to create this subset of people who just by happenstance were born before the 1940 Act to a citizen father out of wedlock. And I don't think it's out of the ordinary to say that a statute, especially in the citizenship area, that you would not take away rights or restrict something retroactively. It would be fundamentally unfair because he would not have had an opportunity under the prior law. There was no age limitation, so it would be unfair to say. Okay, so I still, I mean, this really is where I get stuck. I get more stuck by this than by the contrast between the two paragraphs. So what I want to know is how can you read this provision, divide it up the way you're doing it? Okay, when you look at, you say, the provisions of 201E, hereof apply. Okay, so you're talking about an effectiveness of the Act, not of legitimation, not of when a court of competency grants the declaration. It isn't legitimation, it's just provided. But that's a separate clause. It's separate, but it modifies the other one. But legitimation, by its nature, is retroactive to the date of birth. That's why they say it applies as of the date of birth. That's my point, Your Honor, is that then you're making it surplusage. Well, that's not necessarily so. I don't think it's self-evident that for citizenship purposes they're going to be legitimated as of birth rather than as of the time of legitimation. I don't know why that's so obvious. It's well established in INS guidance that that is definitely the case. So that's why when you read it. But it's in the statute. I'm sorry, Your Honor? Because it's in the statute. But their guidance also provides that. Of course it does, because it's in the statute. I understand, Your Honor. But if you look at the hereof apply as of the date of birth, putting it there, I mean, why wouldn't you say provided that paternity is established during minority by legitimation, that is effective as of the date of birth? I mean, grammatically where it falls. And especially because the 1994 Act, which is expressly retroactive, Congress said we are making the 1994 Act retroactive. They said that. And they used that very line, as of the date of birth. So there is clearly evidence, whether contemporaneous with the 1940 Act or later as they amended this part of the code, that this was meant to basically say we are putting mothers and fathers on equal footing. Essentially, the government wants to do a 180. Prior to the 1940 Act, fathers had it better than mothers in terms of any child born, but certainly out of wedlock. If you take the government's interpretation of this statute, it's a 180. And all of the legislative history says they were trying to remedy an inequity for citizen mothers. They weren't trying to flip the scales and say we're making it better for citizen mothers. And that's certainly evident by the 1952 Act, which simply lays out again the very same requirement for both citizen fathers and citizen mothers. Can I ask you this? Let's say that we're not persuaded by just your pure statutory construction argument, and we go to the equal protection argument and we conclude that there is a gender classification here that needs to be remedied. I guess my inclination would be just to read in from Paragraph 2, the whether born or before or after the effective date of this Act language, into Paragraph 1. And it seems to me if we did that, then your client would still be subject to the legitimation requirement. Absolutely, Your Honor. That is another. You would cede that. That would be a. Then you lose. He still loses. No. You're saying that the whether born before or after the effective date of this Act would be read into the first paragraph. Right. And he would still have to show that he was legitimated before he turned 21. But you could read the statute that way, but that's not how the INS has read it. Their guidance says expressly. Well, it says expressly. I'm really having problems with that. I did, too, Your Honor. No, I'm having problems with what you're saying because they're saying that because that's what they're reading the statute the way I'm reading the statute, i.e., as in general not applying to people born beforehand. So that's what they're saying. Of course, they're right about that. That's what the statute says. If you think that the first paragraph of 205 doesn't apply to people born before 1940, right? They don't say people before 1940 who are born in the Philippines are covered, but they don't have to be legitimated. That is one way to read it. But the other way to read it is why point out something, you know, the age requirement was for those people were not affected retrospectively by the age limitation. Because the guidance in general, and I'm sure if you read through the whole guidance, there's 99 percent of what's in there just reflects what's in the statute because they're providing guidance. They're telling people they're paraphrasing the statute most of the time. I understand, Your Honor, that that then leaves the situation where you have then no justification for this dichotomy. The only one that could possibly make sense is statelessness, okay? But the problem with that is the Congress has never seen that as an issue if you're born in an outlying possession because the requirements have always been the same under the 52 Act and the 1940 Act for citizen fathers and mothers. One year, at least initially, was just being in the outlying possession, and the 1952 Act made it one year continuously in the outlying possession. There's never been a distinction between citizen mothers and fathers with respect to birth in an outlying possession. A foreign country, different issue. We concede that. There are very different requirements for citizen fathers when you're talking about a foreign country. And statelessness and the Oblong case that the government cites, that's dealing with a foreign country. But when you're dealing with an outlying possession, there's never been an issue with statelessness. And there can't be any other justification because if you're talking about connections between the child and the father, well, that comes after birth. A citizen mother who has ties to the territory is no different than the man who has ties to the territory. How do you distinguish between a man and a woman in terms of a connection to a territory pre-birth? Can you just go back one? You said when we're dealing with birth and outlying possessions, there can't be any issue of statelessness. Why is that? It's by Congress because they have always made the requirement the same for mothers and fathers. In the 1952 Act, for both of them, it's one year continuous presence in an outlying possession. It's never been different. It's different for a foreign country. That's where they put on the additional requirement for fathers, five years. I think maybe it would be ten years in one instance. And then for mothers, they say one year in an outlying possession is enough. So they address statelessness there for birth in a foreign country because they look at mothers and say, we're just going to keep it to one year in an outlying possession for mothers. But that's the same thing it's always been for fathers and mothers too. So that shows that statelessness is not the reason for this distinction. Can I ask another question relating to the statutory interpretation? 205 applies to subsection G, right? And also subsection G applies to subsection H. The foregoing provisions of subsection G concerning retention of citizenship shall apply to a child born abroad subsequent to May 24, 1934, right? So the as-of-the-date-of-birth language applies to people covered by G as does the after May 24, 1934, meaning that the as-of-the-date-of-birth can't go all the way back in that context. It has to go back to May 20, because after May 20, if they're born before May 24, 1934, we know the statute doesn't apply. Right. Isn't that confirmed that as-of-the-date-of-birth tells you as of when they're a citizen, not as of when the statute applies to them? No. Actually, what H does is simply is a limitation on G. I think that actually confirms our position. But G, but 5 also applies to G, 205. Correct. But we are moving under E. I know that. But so as-of-the-date-of-birth must mean something other than the effective date, because we have an effective date. Well, I would argue that that provision you're looking at in H is actually a more specific provision dealing with that context that would control. Otherwise, the more general rule, which is hereof apply as-of-the-date-of-birth, would simply go back. But they just made a mistake when they put G into 205. No. What they're saying is if you're under G, you're more limited by H would trump 205 with respect to going back in time. But there's no provision like H that applies to E. E simply says if you're born in an outlying possession, you're a citizen at birth. Where does the rule come from? It's not in the statute. I mean, do you agree that ordinarily these provisions apply to people born after the date? I will say that's the presumption. How can you see that? There's nothing in the statute, but there's case law saying that. Right. However, in this context, I think that simply begs the question, because even the State Department's own guidance, and this was included in our brief, the law applicable in a case to citizens born abroad is the law in effect when the person is born, unless a later law retroactively applies. So it really just begs the question. The State Department guidance is the State Department guidance. It's not been binding on us in any way at all. Is that right? I understand, Your Honor. I understand. It's just simply pointing out that the presumption really doesn't do much here because you've got specific language being used in certain places, and so you really have to look at the acts as they played out in history. Okay. You're way over your time. Can I ask one additional question? Because I just want to be clear on your answer to my prior question. If we don't accept your statutory construction argument, we end up accepting, however, your equal protection argument. We import, as I said, that clause from Paragraph 2 into Paragraph 1. Do you concede that your client would have to show that he was legitimated before he was 21? No, Your Honor. I would not concede that. Okay. Help me with that. It's because of the way the statutes are set up that many times when you have a limitation on a right, and this isn't the only place it happens, you're not going to take away somebody's opportunity that they would not otherwise have had under the prior statute. I mean, it would be fundamentally unfair to tell somebody who's under the premise that, okay, I've got all the time in the world to all of a sudden say, no, you only had until you were 21. I mean, there's nothing inconsistent with the act in saying that this provision can be incorporated in, but that doesn't mean that the entire requirement for the age limitation has to be brought in. I think the way even the INS has interpreted their own regulation, you know, has said that we're not going to do that to somebody. That would just be unfair. Thank you very much. I might have just one minute on rebuttal. May it please the Court, Your Honors. Craig Defoe on behalf of the United States. Your Honors, in this case, Mr. Friend is trying to cherry pick the loosened residency requirement from the 1940 Act and also combine that with the loosened legitimation requirement that applied prior to the 1940 Act. He's trying to combine these two statutes to fit his new theory of citizenship, and the law simply does not support that. Can I just ask a procedural question because I was a little confused? There was a very extensive administrative determination that said essentially his whole story isn't true anyway, right? But that's not before us for some reason? That's correct, Your Honor. In the district court, we argued and the district court agreed that regardless of whether Mr. Friend was born out of wedlock or in wedlock, it didn't affect the outcome of this case. And you brought a summary judgment, a limited summary judgment motion essentially? That's correct. And even though Mr. Friend's theory of the case is based on that. And is that administrative determination, if you went back and litigated it, would that be entitled to deference or you just would start all over again? If we were required to go back and litigate that, the question of whether or not Mr. Friend was born in or out of wedlock in the district court, that would be a de novo determination. Okay, go ahead. Now, as I said, Mr. Friend is trying to cherry pick two different parts of two different statutes and trying to apply that, and the law simply doesn't support that. And first of all, although the government preserves the race judicata argument, I want to get to the substance of things here. And first of all, on the statutory interpretation argument, the plain language of Section 205 of the 1940 Act clearly shows that the first paragraph is not applicable retroactively to people like Mr. Friend who were born before the effective date of that act. Now, the language of that paragraph. Well, it only shows if you read it against the non-statutory and I guess later created, I suppose, presumption that these provisions apply as of the date of birth. I disagree, Your Honor. I think it's clear on the face of it, especially when you compare the first paragraph with the second paragraph. The second paragraph has a very explicit retroactivity provision in it, and obviously that explicit provision is nowhere to be found in the first paragraph. And the language that Mr. Friend is keying in on here from the first paragraph that he's claiming makes that paragraph retroactive is the as of the date of birth language. Now, that's really just a term of art that Congress has used on this occasion and that Congress and also the Attorney General have used before this statute and have used subsequently. And that term of art just refers to the fact that when a child is born out of wedlock and later legitimated, the government recognizes the citizenship from the date of birth. That's true. And that's why I say that there is no language in the statute that says that the statute applies to people born thereafter. That rule comes from outside the statute from the case law. That's correct. Congress wasn't explicit in the first. You did that before. You told me that wasn't true. It is true. Well, I think it's clear that it's not retroactive from the statute, but Congress could have been clearer. Tell me how it's clear from the statute. If you don't have that background rule. Well, if you just compare the first paragraph with the second paragraph, you see that the second paragraph, as Congress stated, is applicable whether the child is born before or after the effective date of this act. That language is nowhere to be found in the first paragraph, and so that clear contrast of language within the exact same section of the exact same statute is what makes it clear and unambiguous that the first paragraph is not retroactively applicable. And even if it were ambiguous, like Your Honor states, the default rule, which is the rule for legislation generally and also is the specific rule for citizenship legislation like this. Well, the rule for legislation generally wouldn't really help here definitively because you still would have to know, I mean, for example, whether it was the legitimization date or whether it was the date that you were trying to apply the rule. In other words, you might say, well, it's not retroactive to say that I'm applying for citizenship now, so the rule that applies now is the rule that's in effect now for citizenship. It's not at all clear what a nonretroactive versus a retroactive rule would be if you didn't have a background rule. I agree. I mean, the general rule isn't super helpful here, but the specific rule for cases of children born abroad. And where does that come from? As far as I know, the specific rule comes from binding precedent from this Court and also the Supreme Court. Which was in existence in 1940, or we don't know that? I'm not sure if there was binding precedent in existence in 1940 on that issue, but clearly it's what Congress understood to be the rule. And if you look at the legislative history behind this particular act, you see that. When Congress and the drafters of this legislation had proposed it, they explicitly stated that the 1940 Act, and that is the entire code, was supposed to be prospective only and not applicable to children born before the effective date of the Act. Now, obviously, there was a legislative process. And after this got passed by the House, it went to the Senate, and the Senate added that explicit retroactivity provision to the second paragraph of Section 205. What about the other similar provisions added at the same time? I mean, the same language appears in 202, for example. Your Honor, I'm not sure if there was. 203 it appears in. I'm not sure if there was, if that's how that language came to be in other sections, but I think it very well might have been, because there was this explicit statement in the legislative history where the drafters stated that this was supposed to be prospectively applicable only. Can I shift you to the equal protection argument? I understand there are issues on the statute of reconstruction, but what really bothers me is the equal protection argument. Am I right in assuming that there is a class of people for whom the citizenship determination will depend solely on the gender of the parent under the 1940 Act, 205 in particular? Well, Your Honor, I think there are, yes. I think you could come up with somebody, and Mr. Friend is arguably one of them. He's obviously arguing he's one of these. I mean, just let me articulate what I think it is and tell me if I'm wrong. I think it's people who were born before January 13, 1941, right, who were legitimated after that date but before they turned 21 and whose parent only lived in an outlying possession. For that group of people, it seems to me, given the way 205 is set up, whether the person is a citizen is going to depend solely on whether they're claiming citizenship through a citizen mother or a citizen father. And to me, that just seems like a blatant, you know, instance of gender discrimination that we need to remedy here. Your Honor, I think you're right. That may be a situation where there is one child who's, you know, depending on whether or not it's the mother or the father that we're talking about, may or may not have been a citizen. But that's not an unconstitutional distinction that Congress drew here. Because why? Well, first of all, I think, you know, you can come up with specific examples of maybe a child, like you suggested, who may have a different outcome depending on whether it's a mother or father. Why is that ever legitimate, though, to have the gender of your parent determine whether you're going to be a citizen? What's the government's interest in having that distinction be the determinative factor? Well, we need to be specific here. It's the gender of a parent of a child who was born out of wedlock. And in this case, the child was born out of wedlock and wasn't legitimated until 27 years later. So there are legitimate distinctions that Congress could. But that's what I was asking about somebody who came in the statute. That's hypothesized for now somebody who was legitimated within the statutory period. Well, that's not the case here, but I understand. We know it's not the case. I'm not sure that. That's why it's a hypothetical. Right. I'm not sure that there is this situation where if the person was born to the father and also. . . Well, let's just take my example. I'm talking about people who are sort of people born before the effective date of the act. So unless Paragraph 1 is retrospective, they're not going to get the benefit of it. They're born out of wedlock. They're illegitimate. They are legitimated after the date of the act. But their parent only lived in an outlying possession, so they have to get the benefit of this expanded residency requirement, right? If the person is claiming citizenship through the mother, they're going to be able to take advantage of Paragraph 2. But if they're claiming through the father, they're going to be out of luck, at least if we accept your version of the statutory interpretation. To me, that just seems wrong. I don't see what the justification is. And you were going to start to articulate why that's justified, and I'd like to hear why. That's right. So for that situation, first of all, I don't think Congress necessarily specifically considered that. Perhaps it would have been better if they had. But, you know, when Congress was drafting and ended up passing the 1940 Act, there were specific reasons for Congress to retroactively apply the second paragraph and not the first paragraph. And, you know, it's not a perfect fit. Obviously, you've brought up a situation where, you know, there appears to be a disparate treatment where, you know, logically maybe we think now that that shouldn't happen. But Congress wasn't required to draft this statute to address every possibility that might arise. And so I think the reason, and it's clear from the legislative history, that Congress chose to only make Paragraph 2 of Section 205 retroactive was to, first of all and foremost, to reduce the instance of statelessness. I understand that's the interest you advanced in your brief, but I don't understand how it ties in with the problem I'm having with the two identically situated children who's claiming citizenship through the father as opposed to the mother. What does reducing statelessness have to do with that distinction that's being drawn? Well, it doesn't address that particular situation that you're talking about. You know, that would be an unfortunate situation. But I think the key is, and this Court and also the Supreme Court have explained this on numerous occasions before, that Congress isn't required to account for every possible situation. That's because there's a predecessor question that you really haven't alluded to. And that is, is this, are we applying a gender discrimination intermediate scrutiny or are we applying something less? And the Supreme Court cases, or at least one or two of them, over vigorous dissents have taken the view that this isn't exactly gender discrimination. Exactly. This isn't just a mother versus a father. In fact, Mr. Friend obviously is not even, there's no gender discrimination that's specific to him. He's claiming the rights of his father. But this is a specific, you know, this is a question of fathers of illegitimate children who, you know, in your hypothetical may have legitimated their child before majority. But in this particular case, the legitimation didn't occur. Put that aside. Let's say that it's still an open question whether he was legitimated before he was 21. Mr. Friend is saying, look, if my U.S. citizen parent had been my mother, I'd be a citizen today. But solely because I'm tracing citizenship through my father, I'm not. And that, there needs to be some justification for that blatant gender discrimination. I still haven't heard anything. Well, I submitted statelessness already. But there are inherent differences for children born out of wedlock, even if they're legitimated later on between, you know, between the role of the mother and the father for that child. The mother has an inherent connection with the child. The biological relationship is almost always obvious from the time of birth on. And there's a greater opportunity for the child to acquire the ties to the mother herself and also acquire the mother's ties to the United States, which is the goals that Congress has always been trying to address when drafting these statutes. And courts have, and by contrast, if you're the father of a child born out of wedlock, it's not automatic that you're even going to know that your child was born. And it's certainly less likely than for the mother that you will have the opportunity to have a close relationship with the child while the child is still young and also that you'll be able to pass on, you know, whatever sort of knowledge and appreciation of American values to your child if you weren't born in wedlock. But in our cases, say, all of those concerns are addressed by the legitimation requirement. That's why we require the father to legitimate the child before 21 or before majority. I still don't see how it justifies treating the mother versus the father differently in terms of the ability to transmit citizenship. Are there other instances, either under prior legislation or subsequent legislation, in this area where mothers and fathers have been treated differently by Congress? Absolutely there are, Your Honor. And what has happened to claims of this sort, equal protection claims, if any, in those cases? Courts, in every case except for one that I'm aware of, have held that the distinction is valid and that there is no equal protection violation. Is this relatively commonplace in this area for this distinction to be drawn? I think the plaintiff's lawyer acknowledged that that was so with regard to residents in Europe or whatever. I think there are plenty of distinctions for children born out of wedlock between requirements for a mother and a father. We see it in this statute and plenty of other statutes, too. The fact that we're talking specifically here about birth and an outlying possession, I'm not sure if there are distinctions in other statutes about that. I know it's generally… Could one, that it's simply a matter of human nature, be that a child is more likely to, upon birth, remain with the natural mother when that child is born out of wedlock? And that, therefore, we say to fathers, well, we can treat you differently. Exactly. And that's what this Court and the Supreme Court have previously held, and that's among the reasons that courts have rejected equal protection challenges that are much like Mr. Friend's. Have the children always been given standing in this sense? I mean, whose interest is the statute intending to affect? Is it both the parent and the child, or is it a parental rights approach? Well, the statute affects the status of the child. Right. But the distinctions are, the primary party withstanding to challenge the distinctions between mothers and fathers are the mothers and fathers. So, Mr. Friend's… Maybe this is the same question again, but I'm having trouble figuring out what the Supreme Court law is on whether we apply heightened intermediate scrutiny to this question. Two opinions, main opinions seem to be Miller v. Albright and Nguyen. Is that right? That's correct. And Miller was completely fractionated, so there was no majority opinion on the standard question. Is that right? That's right. And Nguyen seems to assume that you're applying heightened gender scrutiny, although it doesn't really say so. Is that accurate? That's right. They assume without deciding that intermediate scrutiny. So it's never been decided? It hasn't been decided by the Supreme Court in this type of case. And in our court? In this court, there is precedent for the fact that rational basis only should apply. And what case is that? That's the Ableng case, but there's also additional cases. Ableng is sort of – Ableng addresses this very statute, so that's very applicable. But not this issue after the statute? No, it's a different issue, but it addresses Paragraph 1 instead of Paragraph 2. But there's also Runit v. Schultz, the 1990 decision, similar to Ableng, addresses this statute and actually this very paragraph of the statute, just in a slightly different context. Rational basis was applied there. And also, I believe, the one case where this court actually upheld the equal protection challenge and ended up sort of conferring citizenship on a group of persons was Wachow v. Department of State, and that was a rational basis test as well. So the binding case law in this circuit is that rational basis should apply to a claim like this. Okay, thank you very much. Your time is up. We'll give you a minute. Thank you. Real quickly, with respect to – Does that account to the equal protection law basically accurate? Not necessarily, Your Honor. There are intermediate scrutiny cases. I think you can look at the Supreme Court's two big cases and say that rational basis, at least in this context where you're talking pre-birth residency requirement, nothing to do with contact with the child. I want to emphasize that this requirement is pre-birth. Your Honor, you were asking questions about the mother being in probably the more appropriate position to take care of the child and be there. That's what legitimation is about, and that's where you get those requirements imposed on the father, but not the mother. That was the Oblong decision. Here, we're dealing solely with pre-birth residency. The child is not in the world yet. Pardon me for my question.  You're saying the rational basis would apply to all cases. It would not. I think this has to be an intermediate scrutiny. It is just a – it's in a context of pre-birth residency where it is solely gendered. It has nothing to do with motherly ties, father being – I might say it's irrational, but why would you have a different standard? Well, I would say it is irrational, Your Honor, but I think the reason the standard has to be different here is because one of the presumptions that applies in the cases that reject equal protection challenges is because there's this presumption that the mother will more likely be around in an illegitimate birth. None of those cases apply here because this is a pre-birth residency requirement, and as Your Honor was saying, it is a stark contrast. Had Mr. Friend's mother been the citizen, we're not even here today. That assumes, of course, that he's been legitimated before 21. Do you concede that he's not going to be able to meet that, or is that an open question? Well, the district court denied him summary judgment on that issue. Are you referring to before 21? Before 21. No, I still take the position that the agency is bound by how they've applied the law, and the way they've applied it is to say we're not unfairly going to strip you of your right to citizen. Is there any evidence of a single case where they did that? I don't read what you're reading to me as saying that, and I want to know if you have any actual evidence that they've ever done that. Divided it up the way you're saying. Yeah, absolutely, Your Honor. That was an interpretation. Oh, not a case. It's in their interpretation. The interpretation that you read me, I know you think it says that. I don't. I know. You don't need to read it again. No, it's also in the State Department manual as well. But it doesn't deal with the split the baby to be punished approach that you're taking. Correct. I don't. I have not found a case that has dealt with this specifically. Is he not going to be able to show that he was legitimated before 21? Is that just that issue has been resolved? I don't think that's possible. I mean, before 21, I don't think that's possible. Okay. So that's not being contested. Right. All right. Your time is up. Thank you both very much. Very interesting case. Thank you, Your Honor. Helpful arguments. Thank you. Thank you. Thank you.
judges: Carr, Berzon, Watford